IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROBERT J. BARDO,

      Plaintiff,                    No. 2: 09-cv-1645 JAM KJN P

   vs.

SUBIA, et al.,                         <u>ORDER AND</u>

      Defendants.            <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

I. <u>Introduction</u>

      Plaintiff is a state prisoner, proceeding without counsel, with a civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is defendants' summary judgment motion filed May 13, 2011. This motion is filed on behalf of all defendants except for defendant Meza. After carefully considering the record, the undersigned recommends that defendants' motion be granted.

II. <u>Defendant Meza</u>

      On October 15, 2010, service as to defendant Meza was returned unexecuted because he was not an employee of Mule Creek State Prison ("MCSP") and per "CDC Locator," not an employee of the California Department of Corrections and Rehabilitation. Within fourteen days of the date of this order, plaintiff shall show cause why the claims against

defendant Meza should not be dismissed because of the inability to effect service on this defendant.

III.  Legal Standard for Summary Judgment

Summary judgment is appropriate when a moving party establishes that the standard set forth in Federal Rule of Civil Procedure 56(c) is met.  "The judgment sought should be rendered if . . . there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id. at 323.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the

allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . Where the record taken

1  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no
2  'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).
3  IV. Discussion
4        In his opposition to the pending motion, plaintiff states that he does not oppose
5  granting summary judgment to all defendants except for defendants Johnson and Martinez.
6  Accordingly, the undersigned recommends that summary judgment be granted to defendants
7  Palubicki, Long, Subia, Machado, Martel and Tilton based on plaintiff's non-opposition.
8        A. Undisputed Facts
9        In 1991 plaintiff was convicted of the first degree murder of actress Rebecca
10 Schaeffer. In 1997, plaintiff was convicted of aiding another inmate escape, and received an
11 additional sixteen months to his life without parole sentence. Plaintiff has been housed on the
12 Sensitive Needs Yard ("SNY") at MCSP since March 2000.
13       In May 2007, inmate Garafolo was placed on the SNY at MCSP. Inmate Garafolo
14 requested placement on the SNY.
15       Inmate Garafolo's criminal past before July 27, 2007, included a conviction for
16 voluntary manslaughter in 1990, possession of an inmate manufactured weapon in June 1991,
17 and attempted murder of a peace officer in April 2003. Inmate Garafolo had paroled in 1999,
18 and then was arrested in 2001 for attempted murder.
19       In 1996, inmate Garafolo was designated as an Aryan Brotherhood prison gang
20 dropout.
21       In May 2007, the Unit Classification Committee ("UCC") reviewed inmate
22 Garafolo's record and decided that he was eligible for placement on the SNY. Defendant
23 Martinez was a member of this committee.
24       On July 27, 2007, inmate Garafolo attacked plaintiff, stabbing him numerous
25 times with a shank. Prior to the July 27, 2007 attack, neither inmate had ever spoken to each
26 other or had any contact with each other. No defendant was present during the attack.

1    At all relevant times, defendant Johnson was the acting Facility Captain. At all
2 relevant times, defendant Martinez was a Correctional Counselor I.
3    To be placed on the SNY, an inmate must request such placement.
4    In screening inmates for placement on the SNY, the UCC reviews the central file
5 of the inmate.

### B. Legal Standard for Eighth Amendment Claim

"'[P]rison officials have a duty ... to protect prisoners from violence at the hands of other prisoners.'" Farmer v. Brennan, 511 U.S. 825, 833 (1994) (internal citation omitted). "[A] prison official violates the Eighth Amendment when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious' ... For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Id., at 834. Second, "[t]o violate the Cruel and Unusual Punishments Clause, a prison official must have a 'sufficiently culpable state of mind' ... that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. The prison official will be liable only if "the official knows of and disregards an excessive risk to inmate health and safety; the officials must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id., at 837.

### C. Analysis

Plaintiff alleges that defendants violated his Eighth Amendment right to be free from inmate violence when they placed inmate Garafolo in the SNY yard. Plaintiff alleges that defendants knew or should have known that inmate Garafolo was violent and that they followed a policy of placing violent inmates on the SNY yard.

Defendants move for summary judgment as to defendant Johnson on grounds that she was not part of the UCC that placed inmate Garafolo on the SNY with plaintiff. In her declaration submitted in support of defendants' motion, defendant K. Johnson states, "I was not a

part of the UCC and, therefore, was not a participant in the decision-making process in placing Garafolo on the Facility "A" Sensitive Needs Yard." (Defendants' Exhibit 9, ¶ 2 (Johnson declaration).)

In his opposition, plaintiff argues that defendant Johnson was a member of inmate Garafolo's classification committee. In support of this claim, plaintiff cites to his exhibits A and B, which appear to be identical forms. The same form is attached to defendant Martinez's declaration as attachment A. (Defendants' Exhibit 2, attachment A.) According to defendant Martinez, this form is a copy of the May 2007 initial classification of inmate Garafolo and his request for placement in the SNY. (Defendants' Exhibit 2, ¶ 9.)

Inmate Garafolo's May 2007 classification committee form contains the names of the committee members, which included defendant Martinez, as well as the Committee Chairperson. (Defendants' Exhibit 2, attachment A.) According to the form, G. Anderson was the Chairperson of the UCC. However, it appears that "K. Johnson" signed the form on behalf of G. Anderson. Based on this signature, the undersigned finds that whether defendant Johnson was part of the UCC that placed inmate Garafolo on the SNY with plaintiff is a disputed fact.

Defendants next move for summary judgment on grounds that there was no policy to place violent inmates on the SNY. In support of this claim, defendants refer to the declarations of defendants Martinez, Subia and Martel, which describe the policies for inmate placement on the SNY. In October 2007, defendant Subia was the Warden at MCSP. (Defendants' Exhibit 4 at ¶ 2 (Subia declaration).) In July 2007, defendant Martel was the Chief Deputy Warden at MCSP. (Defendants' Exhibit 5 at ¶ 1 (Martel declaration).)

In their declarations, defendants Martinez, Subia and Martel state that inmates appropriate for SNY include, but are not limited to, prison gang dropouts, victims of assault, inmates with significant enemy concerns, inmates with high notoriety offenses, and former peace officers or employees of the California Department of Corrections and Rehabilitation. (Defendants' Exhibit 2 at ¶ 6 (Martinez declaration); defendants' exhibit 4 at ¶ 8 (Subia

declaration); defendants' exhibit 5 at ¶ 6 (Martel declaration).)

In addition, a primary concern in placing inmates on the SNY is whether or not the inmate may be a "predator." (Defendants' exhibit 2 at ¶ 7 (Martinez declaration); defendants' exhibit 5 at ¶ 8 (Martel declaration).) A predator is an inmate who preys on other inmates and is often an active gang member. (Defendants' exhibit 2 at ¶ 7 (Martinez declaration); defendants' exhibit 5 at ¶ 8 (Martel declaration).) Defendants Martinez, Martel and Subia all state that there was no policy to place violent inmates on the SNY. (Defendants' exhibit 2 at ¶ 12 (Martinez declaration); defendants' exhibit 4 at ¶ 11 (Subia declaration); defendants' exhibit 5 at ¶ 8 (Martel declaration).)

In his opposition, plaintiff disputes defendants' claim that there is no policy to house violent inmates on the SNY. Plaintiff first claims that in 2007, defendant Palubicki told plaintiff that "we put inmates who attack staff and inmates on the yard all the time." (Dkt. 65 at 2-3.) However, plaintiff has not presented a declaration by defendant Palubicki to this effect. Accordingly, the court cannot consider this alleged hearsay statement contained in plaintiff's opposition.

In his opposition, plaintiff also argues that the MCSP SNY yard had numerous violent inmate on inmate slashings and stabbings. (Id. at 65 at 8.) In support of this claim, plaintiff states that inmate Jerry Criado told plaintiff that he killed his cellmate and was placed on the MCSP SNY yard. (Id. at 9.) Inmate Criado also told plaintiff that he went on to attack another inmate on the MCSP SNY yard. (Id.) However, plaintiff has presented no declaration by inmate Criado or other evidence supporting this claim. Accordingly, the court cannot consider these unsupported, hearsay statements allegedly made to plaintiff by inmate Criado.

In support of his argument that defendants followed a policy of placing violent inmates on the SNY yard, plaintiff refers to the declaration of inmate Lopes attached to his opposition. (Id. at 64.) In this declaration, inmate Lopes states that on June 7, 2006, he was assaulted by inmate Montez on the MCSP SNY yard. (Id.) Inmate Lopes states that the day

before the assault, inmate Montez had been caught in possession of a controlled substance, which rendered him a security threat to the yard. (Id.) An assault by an inmate who had been found in possession of a controlled substance the day before is not evidence that defendants followed a policy of placing violent inmates on the MCSP SNY yard.

Defendants' evidence demonstrates that they did not follow a policy of housing violent inmates on the MCSP SNY yard. Plaintiff has not presented any credible, admissible evidence in opposition. Accordingly, defendants should be granted summary judgment as to this claim.

Defendants next move for summary judgment on grounds that they had no reason to believe that inmate Garafolo posed a threat to the safety of plaintiff or any other inmate on the SNY. In support of this claim, defendants have presented evidence that inmate Garafolo met the criteria for placement in the SNY. As set forth in the undisputed facts section above, inmate Garafolo was an Aryan Brotherhood prison gang dropout. In addition, inmate Garafolo's last incident of prison violence occurred in 1991, which involved a cell fight apparently related to his conviction for possession of an inmate manufactured weapon. In his declaration, defendant Martinez states that this one cell fight, prior to inmate Garafolo's gang drop out, was viewed as an isolated incident in the past that did not rise to a pattern of cell violence. (Defendants' Exhibit 2 at ¶ 11.)

In his opposition, plaintiff disputes defendants' claim that inmate Garafolo met the criteria for placement on the SNY yard. Plaintiff argues that inmate Garafolo's status as a Hell's Angels associate or member rendered him inappropriate for placement on the SNY yard. (Dkt. 65 at 6.) Inmate Garafolo's May 2007 classification committee report states that he had a prior association with the Hell's Angels. (Plaintiff's Opposition, Exhibit A and B.) Therefore, the classification committee was aware of inmate Garafolo's prior association with the Hell's Angels when it determined that he was appropriate for placement in the SNY.

For the following reasons, based on the present record, the undersigned finds that

inmate Garafolo's past association with the Hell's Angels, a non-prison gang, did not create an excessive risk to plaintiff's safety.

Although plaintiff has presented no evidence regarding the Hell's Angels activities, plaintiff implies that the court should assume that members of the Hell's Angels sometimes engage in violent conduct. Even taking plaintiff's assumption as true, there is no evidence in the record that in 2007 inmate Garafolo was still associated with the Hell's Angels. Considering that inmate Garafolo had been incarcerated for almost 17 years continuously at the time he was placed in the SNY, it is not reasonable to infer that at that time he was still involved with this non-prison gang. In other words, inmate Garafolo's prior association with the Hell's Angels did not constitute a fact from which the inference could be drawn that a substantial risk of serious harm to plaintiff existed. Accordingly, based on this record, the undersigned cannot find that defendants acted with deliberate indifference by failing to exclude inmate Garafolo from the SNY based on his prior association with the Hell's Angels.

Defendants' evidence demonstrates that inmate Garafolo did not pose an apparent risk of danger to plaintiff when he was placed in the MCSP SNY. Defendants' evidence demonstrates that inmate Garafolo met the criteria for placement in the MCSP SNY. Inmate Garafolo was a prison gang dropout whose last act of violence in prison was in 1991. Inmate Garafolo and plaintiff were not enemies at the time of inmate Garafolo's placement in the SNY. Plaintiff has presented no evidence disputing defendants' evidence. For these reasons, defendants should be granted summary judgment as to plaintiff's claim that inmate Garafolo posed a risk of danger to plaintiff.

Defendants also move for summary judgment on grounds that they are entitled to qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009). The defendant bears the burden of establishing qualified immunity.

Crawford-El v. Britton, 523 U.S. 574, 586-87 (1998).

The Supreme Court, in Saucier v. Katz, 533 U.S. 194 (2001), outlined a two-step approach to qualified immunity. The first step requires the court to ask whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier, 533 U.S. at 201. If the answer to the first inquiry is yes, the second inquiry is whether the right was clearly established: in other words, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 201.

Because the undersigned finds that defendants did not violate plaintiff's constitutional rights, no further discussion of qualified immunity is warranted.

Accordingly, IT IS HEREBY ORDERED that within fourteen days of the date of this order, plaintiff shall show cause why defendant Meza should not be dismissed;

IT IS HEREBY RECOMMENDED that defendants' summary judgment motion (Dkt. No. 60) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 21, 2011

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

bar1645.sj